JAMES P. AND MURIEL F. KELLSTEDT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kellstedt v. Commissioner
Docket No. 9883-84.
United States Tax Court
T.C. Memo 1986-435; 1986 Tax Ct. Memo LEXIS 165; 52 T.C.M. (CCH) 462; T.C.M. (RIA) 86435; September 15, 1986. James P. Kellstedt, pro se. Matthew J. Fritz, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by a statutory notice of deficiency dated January 11, 1984, determined a 1979 taxable year deficiency in Federal income tax in the amount of $31,755 and additions to tax under sections 6651(a)[1] and 6653(a) in the amounts of $7,939 and $1,588, respectively. James P. and Muriel F. Kellstedt (petitioners) are husband and wife and resided at Peoria Heights, Illinois, at the time of filing the petition. Some of the facts have been stipulated, and the stipulation and supplemental stipulation of facts and exhibits attached thereto are incorporated herein by this reference. *168 The parties have resolved by settlement, reflected in the stipulations and in the record, many of the issues set forth in the statutory notice, leaving for the Court's consideration questions of the substantiation of several deduction items connected with James P. Kellstedt's (petitioner) law practice, certain real property, and certain personal deductions. Additionally, petitioners contest both additions to tax under sections 6651(a) for late filing and 6653(a) for negligence or intentional disregard of the rules and regulations. For purposes of order and clarity, each of the issues submitted for our consideration will be separately set forth with facts and opinion. "Advertising, Entertaining & Travel" Expense
Petitioner claimed $10,861.04 for "advertising, entertainment & travel" expenses on his 1979 Schedule C concerning reported income and deductions from his law practice. Respondent, in the statutory notice, disallowed $7,415 of the amount claimed which represented entertainment expenditures for which petitioners had not met the requirements of section 274. The parties have stipulated that $6,737 of the $7,415 disallowed was paid to Mt. Hawley Country Club, VISA, *169 Petros Steak House or Jim's Steak House. Two hundred fifty dollars was paid to St. Andrews Episcopal Church [2] on July 16, 1979. At trial petitioner submitted numerous canceled checks which, on brief, he segregated as to various restaurants, VISA, etc. which totaled $17,178.19. Petitioner argues that he claimed only a part of his total entertainment expenses for 1979 and that at least $6,988 [3] is deductible. Petitioner explained that the amounts were expended on clients and employees. In support of petitioner's position, the record consists of canceled checks and petitioner's uncorroborated and generalized testimony, which was devoid of any detail or specifics. *170 Respondent contends that petitioner has not met the requirements of section 274(d) and regulations thereunder, and that petitioner also has not carried his burden of showing entitlement to deductions for purchasing meals for employees. We agree with respondent. To the extent that petitioner made payments for entertainment of clients, section 274(d) would deny a deduction unless petitioner "substantiates by adequate records or by sufficient evidence corroborating his own statement * * * the time and place of the * * * entertainment, * * * the business purpose of the expense, * * * [and] the business relationship * * * of the persons entertained * * *." Petitioner seeks refuge from these rigorous requirements in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), but it is clear that Cohan does not apply to the expenses covered under section 274. See Sanford v. Commissioner,50 T.C. 823, 827-828, affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). To the extent that petitioner relies upon section *171 274(e) regarding these claimed deductions, we detect only possible relevance to meals or entertainment provided employees. Initially, we would have no way of recognizing which, if any, of the expenditures were for employees' meals or entertainment. Further, the circumstances and specifics of each occasion have not been provided. Section 274(e)(2) would appear to permit a deduction for food and beverages served to employees on business premises in appropriate circumstances. The record does not provide sufficient information to determine whether petitioner's expenditures were for a purpose that would come within section 274(e).Respondent argues, and we see some merit to the argument, that it appears that the receipts are for restaurants off the business premises and may not qualify for that reason. Even if petitioner had paid for employees' meals in connection with luncheon meetings, there is some question as to whether those expenditures would be deductible. See Moss v. Commissioner,758 F.2d 211 (7th Cir. 1985), affg. 80 T.C. 1073 (1983). Accordingly, *172 we find that petitioner has failed to carry his burden of proving entitlement to "advertising, entertainment & travel" in excess of the $3,446.04 allowed by respondent. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Amount of Capital Gains from "East Samuel Property" - Calculation of Basis and Year of Includability of Down-Payment
On their 1979 return, petitioners reported the sale of the 1226-8 East Samuel realty for a selling price of $148,995.66, along with a $70,000 adjusted basis, thereby reflecting a long-term capital gain of $78,995.66. Respondent, in the statutory notice, determined a $111,000 long-term capital gain based upon a $155,000 sales price and $44,000 adjusted basis. Respondent has now conceded that petitioners are entitled to reduce the sales price by $1,157.34 in selling expenses and increase the adjusted basis by $3,183.90. The remaining differences between the parties are attributable to a $5,000 downpayment received in 1978 and not reported as part of the selling price in 1979 and various improvements that petitioners claim were made since acquisition *173 of the East Samuel property. It is not clear from petitioners' briefs whether they contest the $5,000 downpayment aspect of this case. Petitioners have not shown this to be an installment sale so as to permit reporting of the transaction over several taxable years. The recognition of gain by petitioners should occur upon the consummation of the sale, which occurred in 1979. The downpayment of $5,000, received in December 1978, is to be considered part of the sales price for the purpose of the computation of gain in the circumstances of this case. Bourne v. Commissioner,23 B.T.A. 1288, 1293-1294 (1931), affd. 62 F.2d 648, 649 (4th Cir. 1933), cert. denied 290 U.S. 650 (1933). See also Westrom v. Commissioner,T.C. Memo. 1966-198, involving an Illinois taxpayer who received $5,000 earnest money in a prior year which was treated as conditional until the year the sale was consummated. The remaining aspect of the East Samuel property is the adjusted basis for purpose of determining gain. The sales price was $153,842.66 and petitioner purchased East Samuel in 1973 for $44,000, composed of 2 separate parcels for $22,000 *174 each. When purchased, each of the parcels had a building upon it. Petitioner razed 1 of the 2 buildings and used the other for his law office. The site of the razed building was prepared and used as a gravel-paved parking area. Respondent agrees to the $44,000 cost and an additional $3,183.90 [4] basis, for a total basis of $47,183.90. Petitioners have presented only broad generalizations by means of testimony about expenditures to improve the East Samuel property. Petitioners apparently sold the East Samuel property to a bank or some other adjacent commercial establishment for use as a parking lot. In preparation for this use and sale in 1979, petitioner arranged at a cost of $9,800 [5] to move his former law office building from East Samuel to another location. The expenditures to prepare, move and affix the building to the new plot of land are certainly not includable in petitioners' basis to compute gain from a sale, for the building has been retained for petitioners' use or sale at another location. *175 Essentially, petitioners would be entitled to include in basis the cost of demolition of the second building and grading of the parking area, to the extent that those items were not previously expensed or capitalized and depreciated. Unfortunately, petitioners have failed to carry their burden of showing the amounts attributable to those improvements or that said improvements were not already a part of the $3,183.90 conceded or agreed to by respondent. Welch v. Helvering,supra;New Colonial Ice Co. v. Helvering,supra; Rule 142(a). We therefore find that petitioners have failed to show that their basis in the East Samuel property was more than $47,183.90 or that the sales price was less than $153,842.66. Depreciation - 1215 East Duryea Property
Respondent disallowed $2,200 of depreciation claimed by petitioners with respect to a duplex family housing structure located at 1215 East Duryea for the reason "that the property was [not] used in a trade or business or in the production of income." The property had been rented to a Mrs. Hibbert. Early in 1979, there was a dispute concerning whether the tenant or landlord was responsible *176 under the lease agreement to pay for furnace repairs. In connection with the disagreement, Mrs. Hibbert moved out and petitioners had difficulty renting the property during the remainder of 1979. Respondent argues that section 1.167(a)-10(b), Income Tax Regs., would prohibit a depreciation deduction when an "asset is retired from service." We are unable to find that petitioners retired this property from service during 1979 and, accordingly, hold that petitioners are entitled to deduct $2,200 of depreciation for 1979 regarding the rental property located at 1215 East Duryea. Rental Expenses - Provincetown and 1230 East Duryea Properties
With respect to the 1230 East Duryea property, petitioners reported $1,200 of rents and claimed $1,650 and $225 for depreciation and expenses, respectively, representing petitioners' one-half interest in the property during 1979. Respondent, in the statutory notice disallowed $50 of the depreciation and the $225 in claimed rental expenses. Respondent, by stipulations, agreed to allow an additional $50 in depreciation. At trial, petitioners presented evidence of expenditures connected with this rental property *177 and now claim total rental expenses of $1,114.21. [6] Based upon petitioner's testimony and Exhibits 17, 18, 19, 32 and 37, we find that the following ordinary and necessary non-capital expenditures were made in connection with the 1230 East Duryea property: Utilities -- water, $32.55; insurance, $134; and repairs, $733. Accordingly, petitioners have carried their burden of proving $899.55 in rental expenses and are entitled to deduct $449.78 in connection with the 1230 East Duryea property for 1979, an amount which exceeds respondent's disallowance by $224.78. With respect to the Provincetown property, petitioners reported no rents and claimed $750 and $250 for depreciation and expenses, respectively, during 1979. Respondent, in the statutory notice, disallowed the $250 in claimed expenses. Respondent now contends that he should not have allowed the $750 [7] claimed by petitioners for depreciation, because petitioners have not shown that the property was not held for personal use and was held for the production of rental *178 income. At trial petitioners presented evidence of expenditures connected with the Provincetown property and now claim $801 in rental expenses. This real property consists of two buildings on the same lot used by petitioners for personal purposes. Apparently there is a larger single-family dwelling, used exclusively by petitioners for personal purposes, and a separate building, referred to as the "studio," consisting of 3 rooms and a bath. Five hundred eighteen dollars of the $801 in claimed expenses represent a one-sixth proration of numerous alleged expenditures which petitioners have failed to segregate as to the main dwelling or the studio.[8] Further, petitioners have failed to show that these expenditures were non-capital in nature so as to be currently and fully deductible. With respect to the remaining $283 of expenditures for utilities and "bowls and trays," petitioners have failed to carry their burden of showing that the studio was held out for rental or the production of income because of admitted personal use and no credible *179 evidence of rentals or efforts to rent the property. Johnson v. Commissioner,59 T.C. 791, 813-815 (1973), affd. without discussion of this point 495 F.2d 1079 (6th Cir. 1974). Accordingly, we find that petitioners are not entitled to the $250 claimed on the return or any additional amounts of alleged expenses (1) because any expenses incurred were not connected with property held for the production of income and (2) partially for failure to prove any expenditures were allocable to the studio. Interest Deductions
Petitioners claimed $18,060.56 in interest expense as part of their itemized deductions from adjusted gross income. Respondent, in the statutory notice allowed only $3,364.56 [9] as an itemized interest deduction. In the stipulation of facts, respondent agreed that petitioners were entitled to $6,978.89 additional *180 allowable interest. Likewise, in a supplemental stipulation of facts, respondent agreed to more allowable interest in the amount of $4,335.63. At the beginning of the trial, respondent's counsel orally stipulated that petitioners were entitled to yet another $841.34 in allowable interest deductions. Therefore, going into the trial, petitioners' $3,364.56 statutory notice allowance increased to $15,520.42. Considering the $18,060.56 claimed, petitioners' burden was to show an additional $2,540.14 to reach the original amount of interest deducted for 1979. In an attempt to substantiate some part of the $2,540.14 difference, petitioners, on brief, argue for allowance of the following amounts: (1) $750 -- Mass. Mutual Insurance Co.; (2) $184 -- credit cards; (3) $1,948 more than $4,300 respondent already allowed for Illinois Mutual; (4) $493 more than the $1,100.62 respondent allowed *181 or petitioners originally claimed for Chillicothe Federal; and (5) $40 more than the $79.93 respondent allowed for Madison Park Bank. With respect to all items other than "Mass. Mutual Insurance Co.," petitioners have failed to come forward with evidence from which we could find amounts of interest allowable in addition to the $15,520.42. Welch v. Helvering,supra; Rule 142(a). With respect to "Mass. Mutual Insurance Co.," petitioner produced a check dated "12/27" and canceled January 10, 1979, to "Mass. Mutual Life Ins." in the amount of $375. Petitioners claimed $750 regarding a loan upon an insurance policy for which interest payments were made twice each year. We agree with respondent that petitioners reported on the cash basis, as reflected in their 1979 return, and the $375 check was issued in 1978, a fact that petitioners have not denied. On the other hand, the one check coupled with petitioner's testimony is sufficient to permit our allowance of one $375 payment made by petitioners during 1979. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Accordingly, we find that petitioners are entitled to an interest deduction of $15,895.42 *182 for the taxable year 1979. Medical and Dental Expenses
Petitioners claimed, without considering the 1 and 3-percent limitations, $1,760, $897.73 and $899.69 for medicine, doctors and dentists, and other medical items on Schedule A of their 1979 return. Respondent, in the statutory notice, disallowed the entire amount claimed because petitioners did not show the amounts were expended at all or for purpose claimed. Petitioners, on brief, summarized their view of the evidence in the record supporting the deduction of the following proposed amounts: Medicine -- $2,753.76; doctors, etc. -- $786; hospital -- $160; and "Other" -- $627.40. Respondent, on brief, conceded that the record supports petitioners' summary amounts of $786 for doctors and $627.40 for "Other." The first of the 2 remaining items in dispute involves a $160 amount concerning St. Francis Hospital Medical Center. The only evidence offered by petitioners is a receipt [10] for a personal check in the amount of $160 regarding Florence Kellstedt, who is petitioner's mother and claimed as a dependent on petitioners' 1979 return. Petitioners have offered no other documents or testimony to show that the payment was *183 made by them and/or that the payment was made during 1979. Accordingly, we find that petitioners have failed to carry their burden of substantiating this claimed amount. Welch v. Helvering,supra; Rule 142(a).
The other unagreed "medical" item concerns medicine and drugs. Petitioners only claimed $1,760 on the their return and, on brief, now claim $2,753.76 for medicine and drugs. The conduct of the trial and the parties' briefing of this item was confused due to petitioners' poor organization of the materials. Although respondent has made limited concessions, [11] it will be necessary to review and summarize Exhibits 21, 27 and 28, which consist of a mixture of unorganized documents. The documents may be categorized into 3 general categories: (1) Checks, sales slips and memoranda regarding vitamins; (2) checks, receipts and prescriptions from Smith Drug Store; and (3) petitioners' ledger sheet for the period June 1, 1979, through August 31, 1979, from Smith Drug Store. *184 Petitioner was under the care of a doctor for several physical problems which required vitamins as part of the doctor's recommended treatment. With the exception of vitamins that may have been purchased at Smith Drug Store, petitioners' vitamin purchases amounted to $167.28. This allowance is reflected in Exhibits 21 and 28 by checks numbered 040 and 1663 and page 6 of Exhibit 28. The remaining documentation which petitioners have advanced to support the additional purchase of vitamins is unspecific and uncorroborated and therefore not persuasive. Moreover, it is difficult to determine which of the vitamins purchased were for petitioner's health rehabilitation and which petitioners consumed for non-medical purposes or merely for their own self-imposed purposes. Lingham v. Commissioner,T.C. Memo. 1977-152. Regarding Smith Drug Store, petitioners provided 8 canceled checks [12] totaling $1,592.88. Petitioners also provided a 3-month running ledger account of their purchases at "Smith" during June 1 through August 31, 1979.The purchases for the 3-month period totaled $491.87 without considering sales tax, and we determined that $318.73 of the purchases were *185 for medicine or drugs connected with petitioners' health problems. As a percentage, petitioners' purchases at "Smith" during the 3-month period were, on the average, 65 percent "tax" deductible items. Based upon petitioner's testimony, some corroborating evidence of prescriptions having been filled at "Smiths," and the record regarding these items, we find that 65 percent of the $1,592.88 paid to Smith Drug Store or $1,035.37 is deductible for 1979 (subject to the 1 and 3-percent limitations) by petitioners as medicine and drugs. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Accordingly, we find petitioners have carried their burden with respect to $1,202.65 ($1,035.37 plus $167.28) of medicine and drugs for the taxable year 1979. State and Local Tax - "Water Tax"
Petitioners contend that they pay an annual "tax" ($56 during 1979) to the local municipality in exchange for water and a "hookup" supplied by the municipality. Section 164 provides for the allowance of a deduction *186 for State and local taxes, but the type of "tax" petitioners contend they paid does not fit within the specified categories. Further, the "tax" as described by petitioner is not an ad valorem tax but is more like an annual charge or fee in exchange for water service. Mahler v. Commissioner,119 F.2d 869, 873 (2d Cir. 1941), cert. denied 314 U.S. 660 (1941). Accordingly, petitioners' claimed "water tax" is not deductible for their 1979 taxable year. Self-Employment Retirement Plan - Keogh Plan
Petitioners did not claim a deduction for a contribution to a Keogh plan on their 1979 return. [13] At trial and on brief, petitioners now seek a $3,500 deduction for an alleged contribution to a Keogh plan. In support of the claimed deduction, petitioners offered an unexecuted copy of a January 1, 1984, amendment of a December 31, 1971, Keogh plan with Jefferson Trust and Savings Bank and a $3,500 check to the bank dated April 16, 1979. *187 Respondent contends that petitioners have properly shown the terms of their 1979 Keogh plan but that, under the facts presented, the $3,500 check was for petitioners' 1978 taxable year because the check payment made to the bank was dated April 16, 1979, the last possible date [14] for a 1978 contribution to a Keogh plan. See sec. 404(a)(6). We find that petitioners' evidence does show that they participated in a Keogh plan, but we agree with respondent that petitioners have not carried their burden of showing payment to a qualified plan for the 1979 taxable year. Welch v. Helvering,supra;New Colonial Ice Co. v. Helvering,supra; Rule 142(a). Sec. 6651(a) - Addition to Tax for Failing to Timely File a Return
Section 6651(a) provides for a 5-percent per month (not to exceed 25 percent) addition to tax where failure to file is not due to reasonable cause *188 and is due to willful neglect. Petitioners sought and received 2 extensions within which to file their 1979 U.S. Individual Income Tax Return for the calendar year 1979. The return was due April 15, 1980, and the time was extended to October 10, 1980, by means of the 2 granted requests for extensions. Petitioners' 1979 return was signed on "2/81" and filed on or about February 28, 1981. In their application for extension of time granted July 1, 1980, petitioners cited the press of business and personnel problems as reasons for the extension. At trial and on brief, petitioner additionally contended that the general condition of his health was poor. We cannot accept petitioners' reasons as reasonable cause. After 2 extensions, petitioners filed a return over 4 months later than the extended time. Furthermore, petitioners' case was petitioned to this Court more than 3 years after filing the return and was continued from a March 18, 1985, trial session to a special session August 6, 1985, and petitioner had not yet organized his documentation for a tax return filed some 4-1/2 years before. We find that petitioners have exhibited a propensity to be dilatory and that there was not *189 reasonable cause for that pattern of conduct in connection with the filing of their 1979 return. Dustin v. Commissioner,53 T.C. 491, 500-501 (1969), affd. 467 F.2d 47 (9th Cir. 1972). Sec. 6653(a) - Addition to Tax for Negligence or Intentional Disregard for Rules and Regulations
As discussed in connection with the addition to tax for late filing, petitioners were dilatory in organizing their supporting documentation in support of the items on their return. In addition, many of petitioners' claimed deductions were estimates. Petitioner points out that in some instances the evidence reflected that he was entitled to more than he claimed. Respondent, however, cogently points out that petitioners' evidence fell far short of the mark on numerous deductions. Petitioner's slovenly and inadequate bookkeeping constitutes an appropriate reason for respondent to determine an addition to tax under section 6653(a) and we so hold. Petitioner, as an attorney, should be aware of his obligation to maintain proper records in connection with income tax matters. Petitioners have failed to carry their burden of showing that they exercised proper care in *190 preparation of their 1979 return. Cobb v. Commissioner,77 T.C. 1096, 1101-1102 (1981), affd. by unpublished order 680 F.2d 1388 (5th Cir. 1982). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner has contended that this $250 check showing a church as payee should provide the basis for a contribution deduction. We are somewhat at a loss how it became a part of advertising, entertainment or travel, but more importantly, petitioner has not shown that this amount was paid as a contribution or the donative intent of the payment.↩
3. We are somewhat at a loss as to how petitioner computed that he was entitled to deductions of $6,988 in excess of the $3,446.04 allowed by respondent. The differences between the amount claimed and disallowed is of no consequence because of petitioner's failure to properly substantiate the $6,988 additional amount under secs. 274 or 162↩.
4. The parties have provided no explanation as to the improvements or specific expenditures which comprise the $3,183.90 concession by respondent to increase petitioners' basis in the East Samuel property. ↩
5. Although petitioners claimed over $30,000 in increases to basis of the East Samuel property, documentary evidence was provided which corroborated a $4,800 payment to Fred Bologna on Oct. 18, 1979, as the second payment on a $9,800 contract price to move the East Samuel building to another location and the payment of $15.10 to the Village of Peoria Heights for a building moving permit.↩
6. Due to petitioners' one-half ownership interest in the 1230 East Duryea property, they would only be entitled to one-half of any deductible expenditures.↩
7. On brief respondent declines to raise the $750 depreciation issue "to avoid injecting yet another new issue * * * at this late date * * *."↩
8. It may be appropriate to prorate expenditures by a percentage based upon area or some other measure where one is attempting to allocate overall expenditures attributable to a room or portion of a larger building, but we find petitioners' approach inappropriate in this case where there are two separate buildings.↩
9. Respondent rounded off to the nearest dollar in the statutory notice, which may account for a few cents difference between the petitioners' return, the briefs, and this opinion. Because our opinion finds specific amounts, the specific amounts are to be used for any calculation under Rule 155.↩
10. The receipt is part of composite Exhibit 28 and appears on the upper left corner of the first page of the exhibit.↩
11. Respondent conceded $32.94 ("Edna's Health" and "Mats Pharm") and $205.92 from Exhibit 28.↩
12. There were several duplicate photocopies of checks to Smith Drug Store.↩
13. We are not surprised that petitioners did not claim a deduction for a contribution to a Keogh plan because petitioners did not have any "earned income" from self-employment within the meaning of sec. 404(e)(1), limiting the deduction to 15 percent of "earned income," and sec. 401(c)(2), defining "earned income" as net earnings from a business in which personal service is a material income-producing factor. For 1979, petitioners reported a $13,909.71 loss from the practice of law on Schedule C.↩
14. April 15 fell on a Sunday in 1979 and April 16, 1979, was the last date for timely filing of a calendar year Federal return of income without extensions. Secs. 6072(a) and 7503.↩